UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**ROBERT W. FEELEY and MARY D. FEELEY**  Chapter 7
    Debtors  Case No. 06-13582-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**DONALD R. LASSMAN, Chapter 7
Trustee for ROBERT W. FEELEY
and MARY D. FEELEY**,

v.  Adv. P. No. 07-1201

**JOHN J. REILLY, JR., MICHAEL T. HULL,
AFFORDABLE FUNDING MORTGAGE CORP.,
RICHARD COSTA, and RAYMOND KOHLMAN**,
    Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

MEMORANDUM

**I. INTRODUCTION**

    The matters before the Court are the Chapter 7 Trustee's Motion to Dismiss Counterclaim of John J. Reilly, Jr., and the Chapter 7 Trustee's Motion to Dismiss Counterclaim of Raymond Kohlman. The primary issue presented by the Motions is

1

whether the Chapter 7 Trustee is immune from suit. For the reasons set forth below, the Court finds that the Trustee is protected from the assertion of counterclaims by John J. Reilly, Jr. ("Reilly") and Raymond Kohlman ("Kohlman") under the doctrine of derivative judicial immunity.

## II. BACKGROUND

The Debtors filed a voluntary Chapter 7 petition on October 6, 2006. Four days later, pursuant to 11 U.S.C. § 701(a)(1), the United States Trustee appointed Donald R. Lassman as the Chapter 7 Trustee (the "Trustee"), and he has served as the duly appointed and acting interim Trustee since October 11, 2006.

On July 27, 2007, the Trustee filed a First Amended Complaint against Reilly and Kohlman, as well as Michael T. Hull ("Hull"), Affordable Funding Mortgage Corp. ("Affordable Funding"), and Richard Costa ("Costa")(collectively, the "Defendants"). In his First Amended Complaint, the Trustee outlined a foreclosure rescue scheme that allegedly stripped the Debtors of the equity in their home. Specifically, he alleged: 1) that prior to March 29, 2006, the Debtors owned property located at 79 Central Avenue in Seekonk, Massachusetts (the "Seekonk property"); 2) that, as of March 29, 2006, the Debtors owed approximately $327,000 to the holder of a mortgage secured by the Seekonk property, as well as approximately $19,500 in current and past due real property taxes to the Town of Seekonk, some of which were secured by a lien on the Seekonk property; 3) that, in early 2006, at a time when the Debtors were experiencing financial difficulties, they were introduced to Hull, who held himself out as a paralegal in the law office of Kohlman,

a licensed attorney in Massachusetts; 4) that the Debtors have neither met with nor spoken to Kohlman; 5) that Hull was a licensed attorney in Massachusetts, but his license was suspended indefinitely in 1990; 6) that Hull never informed the Debtors that he had been a licensed attorney or that his license had been suspended; 7) that Hull advised the Debtors that he could help them avoid foreclosure by locating a buyer who would purchase the Seekonk property and lease it back to them and that this was a way for the them to "refinance" their home using a third party's good credit in exchange for that party's receipt of a one-time lump sum payment; 8) that Hull advised the Debtors that they would be making the down payment on the new mortgage using the equity in their home and that, in lieu of rent, they would making mortgage payments on their home; 9) that Hull further advised them that after twelve months they could "refinance" their property by repurchasing the property from the buyer; 10) that Hull introduced the Debtors to Reilly, who offered to purchase the Seekonk property for $450,000; 11) that the Debtors accepted Reilly's purchase offer which would yielded approximately $103,500 in equity in their home; 12) that Reilly's purchase closed on March 29, 2006; 13) that the Settlement Statement showed "Cash to Seller" in the sum of $88,875.40, representing the Debtors' equity in the Seekonk property, less closing costs of approximately $15,000; 14) that, at the closing, the Debtors did not receive $103,500 in equity or even the $88,875.40 as set forth on the Settlement Statement; 15) that the Debtors received $4,953.43; 16) that disbursements at the closing included (a) $47,921.97 to Reilly to cover his down payment of $45,000 on the Seekonk property, plus $2,921.97 in closing costs charged to Reilly; (b) $12,000 to Reilly as

3

a "security deposit" to cover any mortgage payments that the Debtors might miss during the lease period; (c) $18,000 to Reilly as a one-time cash payment; (d) $6,000 to Costa, Reilly's mortgage broker; (e) approximately $15,000 in closing costs, of which $8,000 was designated as a fee to Affordable Funding and $6,000 was paid to Costa by the Debtors directly; 16) that Hull, Reilly, and Costa swindled the Debtor out of their equity, leaving them with only a one-year lease that permitted them to reside at the Seekonk property if they made Reilly's mortgage payments; 17) that the Debtors' financial condition did not improve as a result of the closing; 18) that the Debtors failed to make Reilly's mortgage payments; 19) that Hull advised the Debtors to file bankruptcy and offered to represent them for $1,500; 20) that the Debtors paid Hull $1,500 and that Hull gave them a receipt indicating that the $1,500 fee was received by him "on behalf of Kohlman;" 21) that Hull prepared the Debtors' Chapter 7 petition and filed it on October 6, 2006; 22) that Hull advised Robert Feeley that when he filed the petition "'I told them I was you;'" 23) that the Debtors' Chapter 7 case was dismissed on October 26, 2006 because the Debtors failed to file statements establishing that they had received credit counseling; 24) that Hull prepared motions to vacate the dismissal and to amend their petition, which were allowed by the Court on November 27, 2006; 25) that, even though pleadings were prepared by Hull, the Debtors' petition indicated that they were *pro se;* and 26) that Hull attended the section 341(a) meeting of creditors, identifying himself as a family friend.

Based upon the foregoing allegations, the Trustee formulated four counts as follows: Count I: Avoidance of Transfer - 11 U.S.C. §§ 548 and 550; Count II: Uniform Fraudulent

Transfer Act - M.G.L. c. 109A, 11 U.S.C. §§ 544 and 550; Count III: Fraud; and Count IV: Violations of M.G.L. c. 93A.  The Trustee sought relief against Reilly with respect to Counts I and II, and he sought relief against all the Defendants with respect to Counts III and IV. Because the Debtors have never met or spoken to Kohlman, the Trustee specifically sought relief against him under the doctrine of *respondeat superior* because "upon information and belief, Hull was an employee of Kohlman's law office and held himself out as such to the Debtors."

Both Reilly and Kohlman answered the Trustee's First Amended Complaint, asserted a variety of affirmative defenses, and raised a number of counterclaims.  Reilly asserted 16 affirmative defenses in his Amended Answer: 1) failure to state a claim upon which relief may be granted; 2) improper venue; 3) lack of jurisdiction; 4) estoppel; 5) failure to plead fraud with particularity; 6) fraud perpetrated by Debtors; 7) contributory negligence; 8) unclean hands; 9) breach by plaintiff or plaintiff's representative; 10) non-party (Robert and Mary Feeley) at fault; 11) insufficient investigation of facts alleged; 12) misrepresentation of fact; 13) misrepresentation of law; 14) improper notice under "MA 93 (A)"[sic]; 14) abuse of process; and 16) failure to join a party under Rule 19.  Kohlman asserted six affirmative defenses summarized as follows: 1) failure to plead fraud with particularity; 2) failure to state a claim upon which relief can be granted with respect to pleading the law of agency and tort; 3) negligence; 4) misrepresentation;  5) abuse of process; and 6) failure to comply with the requirements of Mass. Gen. Laws ch. 93A pertaining to the demand letter sent to him.

Without setting forth any separately numbered allegations of his own, Reilly asserted the following counterclaims: Count I - Breach of Fiduciary Duty; Count II - Negligence; Count III - Gross Negligence; and Count IV - Negligent Infliction of Emotional Distress. Reilly asserted his counterclaims against the Trustee "in Both his Official and Individual Capacity." He predicated his counterclaims upon the existence and breach of a fiduciary duty owed to him by the Trustee under "11 USC §§ 704, 1302 and 1304." [sic] Specifically, Reilly maintained that the Trustee failed to investigate the Debtors' finances, failed to ensure that the Debtors performed their obligations, failed to investigate the Debtors' finances, failed to oppose the Debtors' discharge and "[i]nstituted this adversary proceeding . . . without investigating the underlying facts of the claims made."

Like Reilly, Kohlman did not set forth any separately numbered allegations in support of the following counterclaims: Count I - Negligence; Count II - Misrepresentation/Fraud; Count III -Abuse of Process; and Count IV - Barratry. Like Reilly, Kohlman predicated his counterclaims upon the existence and breach of a duty owed to him by the Trustee. He asserted that the Trustee failed to do "a proper or adequate job" in investigating the Debtors' finances, that the Trustee willfully presented facts in his First Amended Complaint "without a modicum of veracity" which "could reach a level of perjury," and that the Trustee engaged in classic barratry through breach of trust committed with a dishonest purpose.

### III. POSITIONS OF THE PARTIES

The Trustee moved to Dismiss Reilly's Counterclaim on the ground that it is "rife

with conclusory allegations, but without specific factual allegations." The Trustee further asserted that Reilly lacked standing to assert that he breached a duty to the estate, and lacked standing to contend that he failed to investigate the finances of the Debtors, failed to ensure that the Debtors performed their obligations, failed to oppose the Debtors' discharge, and failed to conduct a proper investigation before bringing claims against him. The Trustee noted that Reilly did not allege any facts that would establish that he owed a duty to him, that Reilly was not listed as a creditor, and that Reilly's only role in the case is as a defendant. The Trustee also argued that he was immune from Reilly's counterclaims, including his counterclaim for negligent infliction of emotional distress, citing, inter alia, In re Heinsohn, 231 B.R. 48, 64-66 (Bankr. E.D. Tenn. 1999), *aff'd*, 247 B.R. 237 (E.D. Tenn. 2000).

Reilly responded to the Trustee's Motion to Dismiss his Counterclaim with an 11-page, single spaced diatribe in which he recounted the devastating financial and personal harm caused by the "inaccurate and misleading statements and outrageous claims against the defendant John Reilly" made by the Trustee in his suit against him. After setting forth the "true facts," Reilly asserted that his counterclaims stated sufficient facts to support his claims. He repeated his assertions that the Trustee failed to investigate the Debtors' finances, failed to ensure that the Debtors performed their obligations, failed to oppose the Debtors' discharge and "[i]nstituted the adversarial proceeding without investigating the veracity of the facts presented to him by the debtors and without investigating the finances of the debtors." He concluded:

7

> . . . Lassman argues that, as a trustee, he should "enjoy absolute immunity for acts within the scope of his duties". First, it should be clearly noted that Lassman is being charged with NOT performing his duties as he should have. Therefore, he can't have immunity because he did not actually "act within the scope of his duties", rather he didn't act at all.

The Trustee moved to dismiss Kohlman's Counterclaims for reasons similar to those he advanced with respect to Reilly's Counterclaim. He stated that Kohlman failed to state a claim for relief and, at most, set forth a claim for a violation of Fed. R. Bankr. P. 9011. According to the Trustee, citing Hochen v. Bobst Group, Inc., 198 F.R.D. 11 (D. Mass. 2000), *aff'd,* Nyer v. Winterthur Intern., 290 F.3d 456 (1st Cir. 2002), "'Rule 11 does not provide an independent basis for bringing a suit seeking sanctions.'" Id. at 14 (citation omitted).

In response, Kohlman filed an "Opposition Reply to Plaintiff's Dismissal of Counterclaim"[sic] in which he failed to address the Trustee's Motion to Dismiss his Counterclaim, seeking instead the dismissal of the First Amended Complaint against him and all of the Defendants and referral of the matter to the Office of the United States Trustee.

**IV. DISCUSSION**

In In re Bursztyn, 366 B.R. 353 (Bankr. D. N.J. 2007), the bankruptcy court considered the issue of whether a bankruptcy trustee can obtain a search and seizure order from the bankruptcy court in order to fulfill his duties to collect property of the estate and to investigate the financial affairs of the debtor pursuant to 11 U.S.C. § 704(a). In doing so, it outlined the genesis of derivative judicial immunity. It observed the following with respect to Chapter 7 trustees:

8

Section 701 of the Bankruptcy Code provides that shortly after an individual files for bankruptcy protection under Chapter 7, the Office of the United States Trustee (hereinafter "OUST") "shall appoint one disinterested person that is a member of the panel of private trustees established under section 586(a)(1) of title 28" to administer the bankruptcy case. 11 U.S.C.A. § 701(a) (West 2007). Pursuant to 28 U.S.C. § 586(a)(1), each regional United States Trustee is required to "establish, maintain, and supervise" the panel of private trustees "that are eligible and available" to serve as trustees in cases under Chapter 7 of the Bankruptcy Code. *See* 28 U.S.C.A. § 586(a)(1) (West 2007). Further, 28 U.S.C.A. § 586(a)(3) requires the regional United States Trustee to "supervise the administration of cases and [private] trustees in cases under" Chapter 7. 28 U.S.C.A. § 586(a)(3) (West 2007). The United States Attorney General also "prescribe[s] by rule qualifications for membership on the panels established by United States [T]rustees under" 28 U.S.C. § 586(a)(1). 28 U.S.C.A. § 586(d) (West 2007). Although panel trustees operate under the direction and supervision of the OUST, the OUST itself considers panel trustees to be "private parties," and not governmental employees. *See* Cromelin v. U.S., 177 F.2d 275, 277 (5th Cir.1949) (stating that a bankruptcy trustee "is in no sense an agent or employee or officer of the United States"), questioned on other grounds in Sullivan v. U.S., 21 F.3d 198, 202-03 (7th Cir.1994). In most cases, a panel trustee is ordinarily an attorney or accountant engaged in private practice.

Not only is a panel trustee under the supervision and administration of the OUST, but a trustee is an officer of the court and remains under the supervision and direction of the bankruptcy court during the pendency of a Chapter 7 case. *See* In re Med. Sterile Prods., 310 F.Supp. 262, 264 (D.P.R.1970) ("The powers and duties of a receiver or trustee are prescribed by provisions of the [Bankruptcy] Act, but such officer is not vested with authority to proceed alone. He [or she] remains under supervision and direction of the court.") (citing Lincoln Nat'l Life Ins. Co. v. Scales, 62 F.2d 582 (5th Cir.1933)); Cromelin, 177 F.2d at 277. Even in his or her private capacity, on occasion courts have extended quasi-judicial immunity to private bankruptcy trustees for actions that are functionally comparable to those of judges, namely, those functions that involve "discretionary judgment," because the trustee "is performing an integral part of the judicial process." *See* Lonneker Farms, Inc. v. Klobucher, 804 F.2d 1096, 1097 (9th Cir.1986) ("Hatley, as a trustee in bankruptcy or an official acting under the authority of the bankruptcy judge, is entitled to derived judicial immunity because he is performing an integral part of the judicial process."); Curry v. Castillo (In re Castillo), 297 F.3d 940, 947 (9th Cir.2002) (same).

9

Bursztyn, 364-65 (footnotes omitted). The United States Court of Appeals for the First Circuit recognized the doctrine of derivative judicial immunity which protects trustees performing their statutory duties in In re San Juan Hotel Corp., 847 F.2d 931, 942 (1st Cir. 1988), a case in which the court cited Lonneker Farms, Inc. v. Klobucher, 804 F.2d 1096, 1097 (9th Cir. 1986), with approval.

In a later decision, Mailman Steam Carpet Cleaning Corp., 196 F.3d 1, 7 (1st Cir. 1999), *cert. denied*, LeBlanc v. Salem, 530 U.S. 1230 (2000), the First Circuit addressed the issue of whether an action for negligence lies against a bankruptcy trustee in his *individual* capacity. It observed the following:

> The exact parameters of a trustee's fiduciary duties and the potential penalties for breach thereof are not fixed by the Bankruptcy Code, and the case law is somewhat murky at the edges. It is settled, however, that a bankruptcy trustee may be held personally liable for breach of the duty of loyalty. *See* Mosser v. Darrow, 341 U.S. 267, 271, 274, 71 S.Ct. 680, 95 L.Ed. 927 (1951). The Mosser Court surcharged a bankruptcy trustee for expressly permitting two employees to profit by selling securities to the estate, declaring in unqualified terms that "[e]quity tolerates in bankruptcy trustees no interest adverse to the trust." Id. at 271, 71 S.Ct. 680.
>
> Following Mosser, the courts of appeals have split almost evenly on the question of whether a bankruptcy trustee can be held personally liable for negligence (as opposed to deliberate misconduct).... We heretofore have left the question open. *See* Lopez-Stubbe v. Rodriguez-Estrada ( In re San Juan Hotel Corp.), 847 F.2d 931, 937 & n. 5 (1st Cir.1988); Connecticut Gen. Life Ins. Co. v. Universal Ins. Co., 838 F.2d 612, 621 (1st Cir.1988).
>
> In our view, Mosser, properly construed, strongly indicates that *parties interested in the administration of a bankruptcy estate can seek to surcharge the trustee for negligence.* While Mosser itself involved "a willful and deliberate setting up of an interest in employees adverse to that of the trust," the Court took pains to clarify that "[t]he liability here is not created by a failure to detect defalcations, in which case negligence might be required to surcharge the trustee...." 341 U.S. at 272, 71 S.Ct. 680. The unmistakable implication

of this observation is that, in the absence of deliberate misconduct, negligence suffices for surcharge.

Mailman Steam Carpet, 196 F.3d at 7 (footnote omitted)(emphasis supplied). The First Circuit, however, made a significant distinction pertinent to this adversary proceeding. It stated:

> Courts sometimes have blurred the important distinction between two types of actions against trustees: breach of fiduciary duty claims brought by parties interested in the administration of the estate, and claims in tort or contract brought by third parties. *See, e.g.*, Sherr, 552 F.2d at 1375 (misapplying fiduciary principles to a tort action by a third party). Although a bankruptcy trustee enjoys an immunity vis-à-vis third parties for actions within the scope of his official duties, *see* Ziegler v. Pitney, 139 F.2d 595, 596 (2d Cir.1943); *see also* McNulta, 141 U.S. at 332, 12 S.Ct. 11 (applying this principle to a court-appointed receiver), that immunity neither extends to ultra vires acts, *see* Leonard v. Vrooman, 383 F.2d 556, 560 (9th Cir.1967), nor protects the trustee against claims for breach of fiduciary duty, *see* Mosser, 341 U.S. at 271, 274, 71 S.Ct. 680. *See generally* E. Allan Tiller, Personal Liability of Trustees and Receivers in Bankruptcy, 53 Am. Bankr.L.J. 75 (1979).

Mailman Steam Carpet, 196 F.3d at 7 n.4. In view of the distinction recognized by the First Circuit in Mailman, this Court must determine whether either Reilly or Kohlman are "parties interested in the administration" of the Debtors' bankruptcy estate.

In administering a bankruptcy estate, the Chapter 7 trustee is cloaked with derivative judicial immunity when he properly performs his duties under 11 U.S.C. § 704(a). Pursuant to section 704(a)(1), "the trustee *shall* - (1) collect and reduce to money the *property of the estate* for which such trustee serves." 11 U.S.C. § 704(a)(emphasis supplied). Property of the estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case," as well as "[a]ny interest in property that the trustee

recovers under section . . . 550. . . ." 11 U.S.C. § 541(a)(1) and (4).

In this case, the Trustee is seeking to avoid as a fraudulent transfer under either state or federal law, the conveyance of the Debtors' Seekonk property to Reilly which allegedly resulted in the strip off of the equity in the property which otherwise would have been available for the repayment of holders of allowed unsecured claims. He is also seeking the recovery of damages for fraud and violations of the Massachusetts Consumer Protection Act. *See* Mass. Gen. Laws ch. 93A. Neither Reilly nor Kohlman have alleged that they are parties interested in the administration of the Debtors' bankruptcy estate; neither has alleged that they are creditors of the Debtors' bankruptcy estate, as opposed to third parties with counterclaims sounding in tort. They have filed tort claims against the Trustee without articulating the ostensible duty the Trustee owes to them, as opposed to the statutory duty the Trustee owes creditors of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 704. Thus, Reilly and Kohlman lack standing to assert claims based upon the Trustee's alleged failure to properly investigate the Debtors' financial affairs and to object to the Debtors' discharge. *See generally* In re Newcare Health Corp., 244 B.R. 167, 170 (B.A.P. 1st Cir. 2000); In re Shamus Holdings, LLC, No. 07-1030, 2008 WL 3191315 at *6 (Bankr. D. Mass. Aug. 6, 2008).

Bankruptcy courts considering suits against trustees also have relied upon the Barton doctrine which requires a party to obtain permission of the appointing court before bringing suit against a receiver. *See* Barton v. Barbour, 104 U.S. 126, 26 L.Ed. 672 (1881). Under the doctrine, which has been extended to bankruptcy trustees, a party must seek

leave of the bankruptcy court to file suit in a forum other than that of the appointing court before commencing an action against a bankruptcy trustee. *See* In re Linton, 136 F.3d 544, 545 (7th Cir.1998).  There is authority that the Barton doctrine applies before a third party may sue a bankruptcy trustee in the bankruptcy court.  In re Messina, No. 99B29371, 2003 WL 22271522 at *10 (Bankr. N.D. Ill. Sept. 29 2003).

In In re Weisser Eyecare, Inc., 245 B.R. 844 (Bankr. N.D. Ill. 2000), the court explained the doctrine and its requirements.  It stated:

> Before leave to sue a trustee may be obtained, the claimant must be able to plead the elements of a prima facie case against the trustee. In re Berry Publishing Services, Inc., 231 B.R. 676 (Bankr. N.D. Ill. 1999) citing In re Kashani, 190 B.R. 875 (9th Cir. BAP 1995) . . . .
>
> A trustee "cannot be held personally liable unless he acted outside the scope of his authority as trustee, i.e. ultra vires, or breached a fiduciary duty that he owed as the trustee to some claimant." State of Ill., Dept. of Revenue v. Schechter, 195 B.R. 380, 384 (N.D. Ill.1996).

Weisser Eyecare, 245 B.R. at 848 (footnote omitted).[1]  *See also*  In re Kids Creek Partners,

---

[1] The court added:

Because trustees serve an important function as officers of the court, they enjoy limited personal immunity when operating pursuant to their authority and enjoy absolute immunity if operating pursuant to a court order. *See* Boullion v. McClanahan, 639 F.2d 213 (5th Cir.1981). This immunity applies in all cases except when the trustee acts outside of his or her proper authority. Ziegler v. Pitney, 139 F.2d 595 (2nd Cir. 1943). Parties may generally recover for acts of trustees within their official capacity such as for tort committed by or on behalf of the trustee, or for breach by the trustee of a contract entered into on behalf of the bankruptcy estate. However, any recovery from such claims will be obtained from the estate and not from the trustee personally. The reason for imposition of limited immunity and the leave-to-sue requirement for personal suits against the trustee is that, otherwise, "trusteeship will

L.P., 248 B.R. 554, 558 (Bankr. N.D. Ill. 2000), *aff'd*, No. 00 C 4076, 2000 WL 1761020 (N.D. Ill. Nov. 30, 2000).

Assuming without deciding that the Barton doctrine applies in this proceeding, neither Reilly nor Kohlman sought leave of court to file counterclaims against the Trustee. Moreover, their counterclaims contain no additional factual allegations and are based upon the allegations made by the Trustee in his First Amended Complaint against them and are redundant of their affirmative defenses. *See* Lincoln Nat. Corp. v. Steadfast Ins. Co., No. 1:06-CV-00058, 2006 WL 1660591 (N.D. Ill. Jun 9, 2006)("repetitious and unnecessary pleadings, such as a counterclaim that merely restates an affirmative defense, or which seeks the opposite effect of the complaint, should be stricken . . . ."). The counterclaims filed by Reilly and Kohlman are conclusory and fail to satisfy the "plausible entitlement to relief" standard enunciated by the Supreme Court in Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1967 (2007); *see also* Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95-96 (1st Cir. 2007); In re Shamus Holdings, LLC, No. 08-1030, 2008 WL 3191315 (Bankr. D. Mass. Aug. 6, 2008).

**IV. CONCLUSION**

In view of the foregoing, the Court shall enter an order granting the Trustee's

---

become a more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees. Trustees will have to pay higher malpractice premiums and this will make the administration of the bankruptcy laws more expensive." In re Linton, 136 F.3d at 545.

Id. at 848-49

Motion to Dismiss the Counterclaims asserted by Reilly and Kohlman. The Court notes that Reilly's Opposition to the Trustee's Motion to Dismiss his Counterclaim sets forth allegations which he can assert as a defense to the Trustee's Amended Complaint. Similarly, Kohlman's Opposition contains arguments pertinent to a motion to dismiss the Trustee's First Amended Complaint, or a motion for summary judgment, motions which Kohlman has not properly filed.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: August 21, 2008
cc: Jeffrey Levy, Esq., Sherin B. Lussier, Esq., Raymond D. Kohlman, Esq., Donald R. Lassman, Esq.